IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MORRIS C. SEARS,** | ) |
| Appellant, | ) |
| | ) |
| v. | )   CIVIL ACTION NO.: 12-00377-KD-B |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Appellee. | ) |

**ORDER**

This matter is before the Court on appeal from an order of the United States Bankruptcy Court for the Southern District of Alabama as to *In re: Morris Conley Sears, d/b/a Abba Bonding* (a Chapter 7 Bankruptcy Action #09-11053-MAM) filed by Appellant Morris C. Sears (Doc. 1). The United States of America ("United States") and Morris C. Sears ("Sears") have submitted briefs in support of their respective positions. (Docs. 3, 5, 13). Additionally, an Amicus Curiae Brief has been submitted by the Surety & Fidelity Association of America (Doc. 11), which Sears has opposed (Doc. 12). The appeal is now ripe for the Court's consideration.

**I.    Background**

Between October 2005 and November 2008, Morris Sears entered into surety agreements with the United States, wherein Sears acted as surety on various government projects. In connection with each bond issued, Sears submitted an Affidavit of Individual Surety in which he pledged collateral, *i.e.* real property, to secure bonds. In the affidavit Sears represented that he held clear title to the pledged property and that the property was unencumbered by mortgages or otherwise pledged. The United States contends that these statements were not true. Thus, it argues, that the surety bonds it purchased were bogus and the premiums paid should be reimbursed. Also, the United States contends it is owed for Sears' nonperformance and

nonpayment on a defaulted contractor in a construction project at Big Bend National Park.

Morris Sears, d/b/a/ Abba Bonding filed for bankruptcy in March 2009. In July 2009, the United States filed an adversary proceeding seeking a determination that its losses, resulting from bond surety agreements between Sears and the United States, were not dischargeable because the agreements were prompted by Sears false misrepresentations. Specifically, the United States relies on 11 U.S.C. § 523(a)(2)(A) which provides that a debtor cannot discharge a debt for money "to the extent obtained by false pretense, a false representation, or actual fraud…."

Sears responds that the United States cannot prevail because it is unable to show: 1) that Sears had fraudulent intent when the representation was made; 2) that the government relied on the alleged misrepresentations; 3) that the government sustained any loss proximately cause by the alleged misrepresentations; or 4) that if the government relied on the alleged misrepresentations such reliance was justifiable.

## II. Standard of Review

In a bankruptcy case, the district court functions as an appellate court. In re Sublett, 895 F.2d 1381, 1383-1384 (11th Cir. 1990). In this capacity this Court may not make independent factual findings, but rather, must affirm the bankruptcy court's findings of fact unless they are clearly erroneous. Alabama Dept. of Human Resources v Lewis, 279 B.R. 308, 313-314 (S.D. Ala. 2002) (citing In re Club Associates, 956 F.2d 1065, 1069 (11th Cir. 1992)). See also In re International Pharm. & Discount II, Inc., 443 F.3d 767, 770 (11th Cir. 2005); In re Spiwak, 285 B.R. 744, 747 (S.D. Fla. 2002) (providing that "[a] district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court[]"); FED.R.BANKR.PROC. 8013 (stating that on appeal, bankruptcy court's findings of fact

"shall not be set aside unless clearly erroneous"). A finding of fact is clearly erroneous when, even if there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. In re Hatem, 273 B.R. 900, 903 (S.D. Ala. 2001). By contrast, a district court reviews a bankruptcy court's conclusions of law *de novo*. In re Simmons, 200 F.3d 738, 741 (11th Cir. 2000); Securities Groups v. Barnett (In re Monetary Group), 2 F.3d 1098, 1103 (11th Cir. 1993) (providing that legal determinations are reviewed *de novo*). Equitable determinations are reviewed under an abuse of discretion standard. Spiwak, 285 B.R. at 748 (citing In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883 (11th Cir. 1990)). With this legal framework in mind the Court now turns to the specific grounds asserted in this appeal.

**III.   Discussion**

For a debt to be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), the claimant must prove by a preponderance of the evidence: (1) the debtor made a false representation with the intent to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation. In Re Blizerian, 153 F.3d 1278, 1282 (11th Cir. 1998).

The Bankruptcy Court determined as a matter of fact that Sears had fraudulently misrepresented the status of the pledged collateral with the intent to deceive and that the United States relied on these misrepresentations in awarding the surety bond contracts to Sears. The undersigned has reviewed the record and finds that these determinations of fact are not clearly erroneous.

The Bankruptcy Court also determined that the United States justifiably relied on the misrepresentations. This finding is challenged as an incorrect application of the law concerning

what constitutes justifiable reliance.   As iterated by the Bankruptcy Court, the Eleventh Circuit has explained:

> To constitute justifiable reliance, "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." *Id.* This conclusion, however, does not mean that the reliance must be objectively reasonable. "Although the plaintiff's reliance on the misrepresentation must be justifiable, ... this does not mean that his conduct must conform to the standard of the reasonable man." Restatement (Second) of Torts § 545A cmt. b. Justifiable reliance is gauged by "an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Prosser & Keeton on Torts* at 751 (emphasis added). Additionally, [i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own. *Id.* at 752 (footnotes omitted).

In re Vann, 67 F.3d 277, 283 (11th Cir. 1995).

Sears contends that the United States' reliance on Sears' false statements, concerning clear title and the lack of a mortgage or other encumbrance, was not justifiable because the United States should have requested documentation of the pledged assets as required by the Federal Acquisition Regulations.  However, Monday morning quarterbacking by this court is not allowed.  As explained in detail by the Bankruptcy Court, the contracting officers were subjectively justified in relying on the Sears' affidavit, considering the normal course that is followed concerning corporate sureties and the rarity of individual sureties: Corporate sureties are accepted without the additional documentation because they are pre-approved.  Moreover, there was nothing obviously false or contradictory in Sears' affidavits, which would have prompted further investigation.  Accordingly, the court affirms the Bankruptcy's determination that the United States reliance on the misrepresentations was justifiable.

The Bankruptcy Court determined that the United States incurred losses in the form of

the bond premiums paid by the United States for the bonds associated with ten different bond contracts and a $1,055,724.10 claim made by the National Park Service with regard to the Big Ben project. On appeal, Sears argues that there was no loss. Sears' argument essentially is, no harm no foul. This argument is based on the fact that Sears performed on the bonds in that he investigated, settled, defended and paid many claims under the bond surety agreements. In other words, the United States got what they paid for despite the fact that he obtained the contract to provide the bond surety by fraud. As to the NPS loss, in which the United States did not get the surety they paid for, Sears makes the untenable argument that it was the bankruptcy filing not the lack of worthless bonds that caused this loss.

The court starts with the premise that "the fraud exceptions to discharge exist to punish the debtor for committing fraud." In re St. Laurent, 991 F.2d 672, 680 (11th Cir. 1993). Moreover, the language of the exception itself focuses on the money obtained by the debtor because of a false representation, not on the creditor's actual loss. The fact, as determined by the Bankruptcy Court, is that the United States would not have paid the premiums for surety bonds had they known that the collateral supporting the bonds was without clear title and encumbered. As found by the Bankruptcy Court, the United States purchased worthless bonds. Also, the implicit determination by the Bankruptcy Court is that the NPS claim against Sears would not have occurred but for the false statements made by Sears: had the United States known the truth, it would have sought surety from another source.[1] From these facts, the

---

1 Sears relies on United States v. Woodberry, 359 F.2d 370 (9th Cir. 1966), for the proposition that because the United States would have paid a premium to another entity even if Sears had not been approved as the surety, it did not sustain a loss. The reliance on Woodbury is misplaced. First, the case involves what is compensable under the False Claims Act, not what constitutes a non-dischargeable debt because of fraud. Second, even if the court followed the logic of Woodberry, the present case is distinguishable. The court stated that "[o]rdinarily the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful. Such a rule is readily applied, for example, where a false claim, showing unreal costs, is made in connection with a cost-plus type of contract." Id. at 379. This is

Bankruptcy Court determined that the amount of premiums paid (on certain projects) and the costs associated with acting as the surety when the contractor defaulted on the NPS project are not dischargeable debts. The undersigned finds no error in this determination.

As noted by the Bankruptcy Court, the debt that is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) is not limited to only compensatory damages. The Supreme Court has specifically rejected putting a "restitutionary ceiling on the extent to which a debtor's liability for fraud is nondischargeable." Cohen v. de la Cruz, 523 U.S. 213, 214, 218-219 (1998). In other words the loss directly tied to the fraud is not necessarily equal to the amount of debt that is non-dischargeable. In Field v. Mans, 516 U.S. 59, 61, 64 (1995), the Court described the non-dischargeable debt under 11 U.S.C. § 523(a) as "debts traceable to falsity or fraud." Both the costs associated with the defaulted NPS project and the premiums paid for worthless bonds are debts traceable to falsity or fraud.

## IV.   Conclusion

Based on the foregoing, and after conducting a *de novo* review of the bankruptcy court's conclusions of law, the undersigned concludes that there is no error. Accordingly, it is **ORDERED** that the Order of the United States Bankruptcy Court for the Southern District of Alabama is **AFFIRMED.**

**DONE** and **ORDERED** this the **22nd** day of **August 2012.**

s/ Kristi K. DuBose
**KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE**

---

not a case where the debtor claimed unreal costs. It is also not a case where anything would have been paid to Sears had the truth been known. When the Court stated "over and above what would have been paid" it is obvious that it meant what would have been paid to the claimant not to a third party.